Hear ye, hear ye. This Honorable Appellate Court for the Second District is now open. The Honorable Justice Joseph E. Burkett presiding, along with Justice Donald C. Hudson and Justice Liam C. Brennan. The case is number 2-19-0412. People of the State of Illinois, Plaintiff Appellant v. Melody Gliniewicz, Defendant Appellee. Arguing for the Appellant, Richard S. London. Arguing for the Appellee, Donald J. Morrison. Good morning. This is Justice Burkett speaking. We want to thank you for agreeing to conduct oral arguments remotely this morning. Before we begin, let me make a few more comments about our format today. Justice, if you were in the Elgin Courthouse, you'll be given your regular allotted time. When you are not arguing, as our Clerk, Jeff Kaplan, pointed out, please mute your phone. Each party will have 15 minutes for your main argument. The Appellant will have 5 minutes for rebuttal. As you heard, the Clerk of the Court, Jeff Kaplan, will operate a timer signal. Mr. Kaplan will let you know by this signal when there are 5 minutes remaining in your main argument. The purpose of the 5-minute signal is to ensure that there will be time for questions from our panel today. As is our practice in the Second District, we've all read the briefs and we are familiar with the facts. What will be different today is that we will not be interrupting your arguments with questions as we usually do. Conducting oral arguments remotely makes it awkward to proceed in that manner. We will save our questions until you complete your argument. Keep in mind that you are not required to use all of your time. Certainly, if you complete your argument before the signal, invite us to ask questions at that time. We remind you that no one except the Clerk of the Court is permitted to record the argument. A couple of additional points. People's Exhibit No. 5, the recording of the defendant's interview on October 8, 2015, was not playable on our court's format. We ordered the State to provide a duplicate copy that was playable on our format. The State complied with that order, but along with the new recording or the playable copy, the State submitted a transcript. Mr. Morrison, did you receive a copy of the transcript? Sorry, I was muted. Yes, I did. Okay. We've reviewed the transcript. It appears to be substantively accurate. It will only be an aid to the Court. Are there any questions at all about our format this morning? No, Your Honor. Mr. Morrison? No. Thank you, Your Honor. We also ordered the parties to address the law of the case doctrine, so we would ask you to please discuss that during your main argument. So, Mr. Lundin, appellant, you may proceed. Thank you, Your Honor. May it please the Court, Counsel Richard Lundin, on behalf of the people of the State of Illinois. Your Honors, there are two issues in the current appeal. Whether defendants' unconditioned and unqualified consent to search her phone, combined with the various comments that police would find the same stuff on my phone as on her deceased husband Joe's phone, waived her marital privilege, as to the incriminating evidence contained on Joe's phone, and whether, given the details of a joint criminal conspiracy that are now in evidence, any exceptions to the marital communication privilege apply. Unlike the last two appeals, we now have the texts that are at issue fully before this Court. There is no longer any question that defendant and Joe exchanged potentially incriminating texts. After multiple changes in position, defendant now acknowledges that she voluntarily consented to a search of her phone, but argues that it was limited to what was on her phone at the time she signed the consent form. Defendant still appears to argue that any waiver of the privilege must be specific. This Court has disagreed, finding that a holder of the privilege may waive it explicitly or implicitly, even if that waiver was not necessarily smart. This Court noted that defendant conceded that a voluntary revelation by the holder of a privilege of communication is a waiver of that privilege, and held that the people had made a prima facie case of waiver. Regardless, this Court remanded this matter specifically to determine the then-challenged position of whether defendant's consent was voluntary. While the trial court failed to address that issue, the fact is arguably moot in light of defendant's admission that her consent was indeed voluntary. During the hearing below, the people noted that the sprint records for defendant's phone shows that texts were exchanged between defendant and Joe's phone on April 14, 2015, at the exact time shown in People's Exhibit 4, the extraction report of Joe's phone. People agree that the texts between defendant and Joe's phone contained in People's Exhibit 1 are not on the limited extract report from defendant's phone. However, it's relevant that 12 other Joe's are shown in both the extraction reports of defendant's phone, as well as on her phone records from that date. It strongly suggests that defendant intentionally deleted only the text between her and Joe, knowing they were arguably incriminating. The evidence now demonstrates that when police asked defendant about a message she sent to Joe regarding hiding the money, defendant stated an important part. I mean, if you've got Joe's phone, then you know what the messages are between us. And two, you're just going to find the same stuff on my phone that you're going to find on Joe's phone, so I don't give a flying F anymore. My life is over. And perhaps most importantly, defendant stated, I mean, it doesn't matter if I delete anything off the phone. You're still able to pull it, so let's not treat me like I'm a stupid idiot. These comments demonstrate that despite the actual cursory search of defendant's phone, defendant was fully aware that a search of her phone could have found the deleted text, and therefore defendant's waiver was unconditioned and unqualified. The people have repeatedly argued the only reason defendant's phone, at the time of consent, may not be a mirror image of the text around Joe's phone, is because defendant intentionally deleted those arguably incriminating texts. The fact that defendant did so establishes a consciousness of guilt. No defendant should be rewarded because they destroyed relevant evidence. Because defendant has failed to rebut the prima facie case, their consent was voluntary, and because their consent combined with their comments and actions was unconditional and unqualified, this court should find that defendant has waived her marital privilege as to the evidence contained on Joe's phone. The people also addressed the joint criminal enterprise exception to the marital communication privilege. Unless this court has any questions, the people rely on the arguments contained in the briefs for their other exceptions. Now that the evidence of a joint criminal enterprise is fully before this court for the first time, the people urge this court to reconsider the decision in People v. Krenkel and find a joint criminal enterprise exception to the statute. The rationale for the joint criminal enterprise exception is compelling, and it appears that every court that has analyzed the exception has adopted it. The rationale is that while marital communications are generally protected in order to encourage the sharing of confidence between spouses, the role of spouses is merely incidental, where the communications involve the joint criminal activity, and the interest of justice outweighs the goal of People argue that while all common law privileges appropriately protect important confidential communications that relate back in time, the privileges do not extend to communications in furtherance of ongoing or future criminal activity. And most privileges encourage, if not require, disclosure relating to future criminal actions. Those engaged in criminal activities should not be able to shield their actions under the guise that activities are somehow in furtherance of a marital harmony. In this case, the communications between the defendant or husband appear to relate to a lengthy and pervasive criminal enterprise of still thousands, if not tens of thousands of dollars from an organization, which both defendant and Joe owed a fiduciary duty. This court should find that there is a joint criminal conspiracy exception to the privilege, as well as the other exceptions that the people refer to in their briefs. Finally, in response to this court's order, the parties should be prepared to discuss the law of the case doctrine. The people note that the doctrine only applies to finding in a case as long as the facts remain the same. Accordingly, the doctrine applies to this court's previous holding that the people have made a prima a case that defendant's unequivocal consent to the search of her phone amounted to a waiver of her marital communication privilege. Defendant chose not to rebut this finding below by presenting any relevant evidence regarding her consent on remand, instead merely relying on the fact that the extract of her phone did not contain the text messages at issue. Because the facts remain the same, this finding is controlled by the doctrine. The people next assert that this court's determinations relating to the exceptions to the marital communication privilege are not governed by the law of the case doctrine because the facts do not remain the same in this iteration of the appeal. During our previous oral argument in this matter, this court correctly suggested that a decision relating to whether various exceptions to the privilege would apply in this matter could not be made in a vacuum absent a record that established the actual content of the challenge communications. Because the facts do not remain the same as before, namely the evidence in this case now arguably demonstrates that defendant and Joe were engaged in a joint criminal enterprise, this court can and should reconsider the merits of the exceptions to the marital communications privilege. Your honors, that's the end of my prepared argument and I am ready and open to any questions that your honors have. Very well, thank you, Mr. London. Justice Hudson, your question, sir. Thank you. Mr. London, as a preliminary threshold matter, would you agree that we review the trial court's ruling in this case on a de novo basis as opposed to an abuse of discretion? Correct. And as we know, the holder of the privilege may waive it explicitly or implicitly, is that correct? Indeed, and we believe that that clearly was done so in this case. Not only, you know, was a prima facie case established previously, but defendant has now said that she did voluntarily consent. Does the law recognize a partial waiver of a privilege? Indeed, yeah, well, I suppose that there are circumstances where a defendant could say someone comes to the house and they say, can we search? Yes, you can search everything except under the mattress. And in that case, the police could arguably search everything except under the mattress. They can choose to remain there and attempt to get a warrant to search everywhere, including under the mattress. But yes, if a defendant would attempt to limit, but that limitation cannot be in her own mind. And as we've suggested in this case, she seemed to suggest that it was not in her mind. Defendant fully believed that the people could obtain even deleted portions of her phone and there is nothing that suggests otherwise. It appears she's arguing that because the incriminating messages were not found on the extraction report from her phone, she did not and could not have waived her privilege as to any communication between her husband and her. What's your reaction to that argument? The reaction, as we put in the brief, is it's kind of nonsensical. Of course, she could have waived it. She might not have been. It might be ill advised. I mean, it's indeed she called her attorney as supposedly she did when police asked if they could search her phone. Maybe the attorney at that time could have suggested don't do so without a warrant. May have may have hinted like, you know, it would be great if similar to Tom Brady, the phone is lost. But it of course she could consent. I mean, the fact that the admittedly cursory extraction on the phone did not show that has no relation to whether she could or could not have. Of course, she could have. The question before this court is, did she? All right. Thank you, Mr. Long. That's all I have at this time. Thank you. Justice Brennan, your questions. I have a question regarding the law of the case doctrine. You you're refer you refer to questions one of the panelists asked, suggesting that panels at the time in Glenowitz one did not have the actual emails or sorry, the text. Um, and you suggest that that somehow was the reason why the joint criminal enterprise exception was not adopted by the panel or or considered by the panel. But quite apart from the argument, when you read Glenowitz one, there's no there's nothing along those lines in Glenowitz one. Glenowitz one is very clear that it's not going to that the appellate court is not going to adopt that exception. And they point out that the legislature is aware that that that exception has not been adopted. And there's been six, five or six instances where the statutes been amended, and they've never sought to appellate precedent along those lines, otherwise in the state. So are you suggesting that that's dicta? Or? Because I don't know that we would look at the transcript and use that as a basis to suggest that we didn't say what in fact, we did say in the written opinion. Can you address that, please? Of course. To some extent, it is dicta. And again, why the people are fully acknowledged that that the the court made the rulings that it did in Glenowitz one. However, again, the law of the case doctrine only applies that the facts remain the same. The people are suggesting that in this case, the facts do not remain the same. They're different. And this court should reconsider that. If I may interrupt, even in Glenowitz one, even though they didn't have the actual text themselves, there was no question that when they were addressing that issue, they presumed that there were incriminating text. So even without the details of the text, the principle seems to me to have been very directly addressed. Again, I'm not sure that we necessarily again, I can't speak for the court. But but the opinion doesn't necessarily state that it did assume that there were attacks. I mean, technically, we knew that there was no dispute at the time what the text said, but it wasn't in front of the court. So I, the people cannot say that the court did specifically consider those facts. If indeed it did, then the law of the case doctrine arguably would apply. But we're arguing and people suggest that at least arguably did not. The people also acknowledge that this court suggested that the legislature is presumed to be aware of decisions, interpreting of a statute, and to have acted or presumably in this case, not have acted with knowledge of these decisions. However, it is clear in this case that while the legislature has not made a change to the American communication privilege, based on Krenkel, however, Krenkel did not interpret the statute. Krenkel merely stated, no court in Illinois has found an exception to the statute, that the people assert was not enough to put them on notice that there was an issue. In each of the cases cited in the people's brief, it does appear that the legislatures in those cases, and both the federal and state opinions, the legislatures did not make the changes until after the courts pointed out that this was an issue and made a finding that the exception should apply. Only then did the legislatures make those changes. So while generally it is correct that by policy, the legislature can and probably should be the one to make changes, the courts can, in many instances, have been the impetus to the legislature to indeed consider those potential changes. All right. Is that it, Justice Brennan? Yes. Thank you. Okay. Thank you. Mr. London, you are quite correct about the law of the case doctrine with respect to changed facts, which is exactly what Mr. Morrison, I anticipate, will argue. But don't the facts presented have to be so different as to require a different interpretation? And in this case, we had a proffer from the state in its brief and in the arguments in the trial court before us in Glenowitz 1, where the state asserted that the defendant acted in concert with her husband to take the money from the explorer program. What is the difference in facts? Now, we have more of an understanding, but we certainly had facts before us that showed a joint criminal enterprise and we refused to adopt that exception. What's your response to that? The response, Your Honor, is that while there was a proffer, there was not the facts of what the statements were. The facts that there were statements and that exactly what the statements were, we believe is different enough for this court to at least reconsider the various exceptions. Again, we acknowledge that the court, you know, made the findings that they made. We would ask the court to reconsider. We do believe that the facts are significantly different in that the court can now consider the specifics. However, as we stated in our briefs, we also did need to in case we don't win and we need to preserve those for any petition for leave to appeal. Of course, our major and main argument still is that the exceptions, at least arguably in this case, might be irrelevant because we believe this court can and should find that defendant waived her privilege given the specific facts of this case. You agree, don't you, that the law of the case doctrine is a binding on an appellate court and subsequent appeals unless one of the exceptions applies? You agree? Correct. Thank you. I believe that the exceptions would apply in this case, but yes, the law of the case doctrine is exactly as you've stated. Thank you, Mr. London. Mr. Morrison, your main argument, sir. Thank you. May it please this honorable court, Mr. London, an opportunity to briefly address the court and answer any questions you may have regarding the law of the case doctrine. It is our position that the law of the case doctrine applies to the instant appeal. Both parties should be and are barred from relitigating issues decided in the previous appeal unless, of course, one of the two exceptions applies. In the instant appeal, regarding the issues of, I'm going to talk about three of them now, testimonial versus communication privilege, the third party exception, and the joint criminal enterprise exception, these issues were squarely resolved in the first appeal. No new relevant information exists as to the court's holding on these three issues. Neither exception applies to any of these issues, and therefore, it is the defense position that the state is barred from relitigating these three issues in the instant appeal. I'm going to leave it at that for those three issues, and I certainly would entertain any questions on those three issues after my initial argument. Regarding the issue of waiver of the privilege, this court has in the previous appeal, Glenowitz 1, at paragraph 50, that the state has by its representations to the trial court and by the made a prima facie case of waiver. If this holding applies to only the text messages proven to be present on defendant's phone at the time of the consent, then it is defense position that the law of the case doctrine applies and the state is barred from relitigating this issue in the instant appeal. The reason for that is because at the time Glenowitz 1 was decided, it appeared to all the trial court and to the appellate court that no extract existed as to the contents of defendant's phone at the time she gave consent. Two business days after Glenowitz 1 was decided, the state tendered a full extraction report of defendant's phone taken immediately after she consented to a search of her phone. This extraction report showed, contrary to the state's representations to this court and to the trial court, that the text messages on defendant were not identical to nor the mirror image of the text messages on Lieutenant Glenowitz's phone. This case was remanded for a reopened hearing on the motion in limine, presumably primarily to resolve factual issues regarding the voluntariness of defendant's consent. After receiving this extraction report on defendant's phone, which was contrary to the state's assertions in the appellate court, defendant first filed a motion to reconsider the Glenowitz 1 decision and to supplement her record on appeal, which was summarily denied. Defendant was then left with the remand for a reopened hearing on the motion in limine. At that point in time, based upon the new evidence not believed to be in existence at the time of Glenowitz 1, to abandon her claim that the this court's holding that the state had made a prima facie case of waiver of the contents of her phone, i.e. the case, defendant admitted that she had waived her privilege as to her communications with her husband on her phone and filed an amended motion in limine seeking to bar only the texts between defendant and her husband found on his phone, but not on her phone. Therefore, assuming when you look at paragraph 50 that that holding of waiver applies only to the contents of her phone, then the law of the case doctrine clearly applies and the state is barred from re-litigating that issue. Another reading of paragraph 50 in Glenowitz 1, which is, which I don't know for sure, but it's not our case, but if the holding of a prima facie case of waiver applied somehow to the content of Glenowitz's phone, then a different analysis is required regarding the law of the case with two alternative scenarios. First scenario, it is defense position that the law of the case doctrine does not bar defendant from presenting evidence to rebut this prima facie case of waiver. By its very nature, a quote prima facie unquote case of waiver merely suggests that the state has presented enough evidence sufficient for preliminary showing of waiver and presents a rebuttable inference. That prima facie holding specifically allows and in fact invites the to refute this rebut of waiver. In general terms, in a first appeal, there's a holding that one party has made a prima facie case as to a particular it's our position that the law of the case doctrine does not and cannot bar the other from presenting evidence to rebut that presumption. In the instant case on remand, at the hearing on the amended motion in limine, defendant presented two key pieces of evidence to rebut any presumption that the defendant waived the privilege between her and Lieutenant which refuted the state's position that the communications would be the same on both. And the other evidence were the statements during the interview in exhibit number five where Ms. Glinowitz repeatedly denied making any text messages to her husband regarding hiding of the money. The reason that that is significant and so significant is to refute the state's position that because she said well you're going to find the same thing on his phone that you're going to to make such a statement. Obviously her statement about that was wrong. Most importantly, when you look at the holding in Simpson, by categorically denying the major statement that the state wants to get into this case about hiding the money, by categorically denying it, she did not implicitly waive her privilege as to that statement. It's quite different and opposite from the Simpson case where a defendant acknowledged in the presence of third parties making a statement to her to his wife which otherwise would have been privileged. Getting away from the prima facie, even if this court disagrees and believes that the law of the case doctrine applies to a prima facie case of waiver as to the communication on Lieutenant Glinowitz's phone, then it is the defense position that the exception applies. I want to make it clear that I'm not saying that this court's holding or reasoning in Glinowitz 1 was in any way flawed or palpably erroneous. It's our position that the court's ruling in that case was palpably erroneous because it was based upon false assumptions and did not have the new conclusively contradicted representations to the trial court and to this court that the contents of both phones would be identical. There was discussion about remanding and the state calling an expert witness to show that the contents of the phone would be the same on both phones. That was never done. Instead, what we have, and I'm just finishing up right now, instead what we have is an actual report that shows the exact outcome of what the state had proposed. So in terms of palpably erroneous, now that the court has new evidence and because the court has now evidence in Exhibit 5 where the defendant denied that she ever made statements about hiding the money, for those two reasons, if the law of the case doctrine applies, then the palpably erroneous exception would also apply. Thank you. Justice Hudson, your questions. Yes, Mr. Morrison, I'm a little intrigued by the argument. The police seems to be implying that the information that was obtained on the initial extraction report somehow limits the waiver of the marital privilege. I'm sorry. I'm sorry. Can you say that one more time? Have we lost Justice Hudson? Justice Hudson asked. Can you hear me now? Yes. Again, the question related to the ostensible argument that the information on the initial extraction report somehow limited or does limit the waiver of the marital privilege. On the October 8, 2015 interview, the officers indicated they wanted to search the phone looking for information about hiding money. That topic did come up, correct? Correct. She then made representations that they would find the same information on her phone as they would find on Joe's. You know what the messages are between us, she said. And finally, she acknowledged that she knew a search of the phone could recover deleted messages. Knowing this, she signed a consent to search the cell phone, authorizing a complete search. She did that after consultation with counsel. Why isn't that a full waiver of the marital privilege? Well, I think that she was confronted with these comments about hiding of the money. You then say, well, then she then consented to the search of her phone and she said, find the same things on my phone. But that's not the context of that. When she was asked hiding of the money and three different ways she was asked, she denied those three times. She said she never made that statement and she never would have made that statement. Well, I mean, she did sign the consent for a complete search. Did she not? She signed the consent for a complete search of her phone. What about the fact that she alluded to the fact that she knew, or at least represented the information on her phone would be the same as was on Joe's? Does that sound like the assertion of privilege on there? I don't think it's an assertion of privilege at all. I think it's a statement that she made without the necessary foundation. Obviously, she doesn't have the direct expertise to opine what type of extraction report would be needed to get what information from her phone. But I certainly don't think that that amounts to an implicit waiver of her privilege of what's on his phone. I think an implicit waiver of a privilege is like we see in Simpson, where someone says, well, that defendant didn't clearly explicitly waive his privilege, but he acknowledged making a statement in the parties, which was an implicit waiver of the privilege. In Homerson, we have a defendant who stood silent as the spouse testified as to matters that would have been privileged, and that was an implicit waiver of the privilege. I fail to see the logic of why just because she believed in her head that her phone may have been the same stuff that was on his phone, why that amounts to her waiving her privilege as to what's on his phone. All right, that's all I have at this time. Thank you. Justice Brennan. Well, following up on that, if I may, isn't what's in her head particularly relevant as it relates to what she intended in terms of an implicit waiver? And I guess what I'm getting at is, well, actually, let me start in a different way. Let's assume for the sake of argument that the extraction of her phone actually did show it was a mirror image. I know it didn't, but let's assume it did. Is your position that there still was not a waiver because that wasn't specifically addressed? Putting aside the law of the case for a moment, your argument actually is that she didn't make any kind of a waiver as it relates to marital privilege. Would that be fair? I mean, if we go to brass tacks here? No, that's not what I'm saying. I'm actually saying that if it was true, if the extraction report showed that it was the mirror image, and if the extraction report on her phone showed this statement that said about hiding the money, even if she denied it, if it was on her phone, which she waived, then that would be a waiver of her privilege. And I'm not saying that there wasn't a waiver. Okay, then let me ask you this. Now that you say that, here's my question. She believed, based upon her comments to the officers, that deleted text could be recovered. I mean, we'll never know because they didn't do the right analysis of the phone, but she believed that. And doesn't her belief as it relates to that and her presumed recollection that, of course, these conversations did occur, it doesn't that speak to a complete waiver as it relates to whatever is on Joe's phone? Because she assumed that deleted text could be recovered. I do not believe that that constitutes a waiver. I mean, if that's the case, then why even take her phone? I mean, if she's saying it's the same as on my phone as on his phone, then they wouldn't even need to take her phone. They could say, alone is a waiver of everything that's on his phone. I think the most important response I have to that question is that her statements about, you're going to find the same thing on my phone as her phone, it was her belief. It certainly was in her head because she said it. But as to the statement specifically, hiding of the money, she categorically denied making the statement on, let's say, my phone and the extraction report on her phone does not show that statement. Coupled with the fact that she categorically denied making the statement about hiding the money, that's certainly a way that she could have waived her privilege as to that statement pursuant to Glinowitz 1 and pursuant to Simpson. All right. Thank you. All right. Thank you, Justice Brennan. Mr. Morrison, at the argument on your motion, you told the trial court that, quote, because the appellate court said, well, she waived what was on her phone at that time. Can you tell us where in Glinowitz 1 we said that? I think what I was doing was I was saying, I was saying in paragraph 50, if you look, it says, and I framed my argument, Justice Burkett, in terms of, I think there may be two possibilities, but my argument would be in paragraph 50, where there's the holding, there's a sentence that says, according to the documents we've reviewed, defendant knew that police wanted to review the messages between her and Joe on her phone. Two lines later, it says, Jones told the defendant we would like to review the information contained in her phone. So I interpreted the courts holding in Glinowitz 1 at paragraph 50 as to the contents of her phone, with the argument being made that the state made that it's going to be the same as on his phone as on her phone, and the appellate court, and the court in Glinowitz. I cut you off because we're running short on time. I get your picture. You're saying you were interpreting, correct? Not specifically a quote from our disposition, right? Other than what I have right here, that was my position, yes. And if I misspoke in the trial court and said something, then I apologize for that. And our ruling was that she waived marital privilege as to the messages recovered from Joe's phone, because the impression that we had from the record was that the police did not do any search at all. And as the state explained, the reason there's not a mirror image, and as a trial court observed during argument, is because someone deleted those incriminating messages. That does not affect the waiver, does it? Well, how does that affect the waiver that somebody, whether it was the defendant or somebody else, took the phone and deleted those incriminating messages? How does that affect the waiver that she made during her communication with the police officer's agent, the FBI agent and the police officer, Jones? Well, what I would say about deleting the messages, let's assume that at some point she did delete those messages. We don't know when she deleted them, but I think that strengthens the case of waiver. Because if somebody is going to, forget the consciousness of guilt issue, we're talking about waiver of marital privilege. And if somebody, that they don't want certain messages viewed by other people and wanted to to delete those messages from their cell phone. This was a, her conversation on October 8th of 2015 included discussions about intimate details of her private life with Joe. I mean, I won't, we won't go into all of those, but intimate details. And she also discussed quote unquote, using the Explorer program as a source of loans, money for her and Joe to pay for expenses, DJ's plane ticket. Aren't those comments, all of that taken together, the very revealing conversation about her life with Joe, an indication that she was opening up to law enforcement and aren't those actions inconsistent with her assertion now that she was holding onto marital privilege when in fact, she openly discussed conversations about everything in her life, including Joe's falls and using the Explorer program as a source of funds to pay for their personal expenses. How is that not a consistent with her signing the consent form and saying, you're going to say, find the same stuff on my phone as you have on Joe's. I just don't see it. Where is, where is the, the change in evidence that would support us departing from the law, the case doctrine, when we now have the full conversation, which was very open, laid back, the police officers were very polite to her. Where's the evidence that indicates we should depart from the law, the case doctrine? Well, I mean, what I, what I would make the law, the case doctrine would ask to the waiver. If you're, it sounds like we're saying now that you, I'm sorry, it sounds like you're saying now that the, that the holding was specifically relating to what was on Joe's phone. And I understand, I understand that if that's the case, then if the holding was prima facie case of waiver, then the case does not apply because we're allowed to, at the reopened hearing, we're actually invited to put on rebutting evidence. And we did that by putting on the, um, the extraction report and the, um, interview. And I just quite frankly, um, Justice Burkett, I, I, I disagree with the fact that if, since she was during her interview, and because she was honest about certain things, doesn't mean that she waived privilege as to everything she ever said to Joe Glenowitz. I don't think that that's the law. I don't think that that's the case here. Let me ask this. Our Supreme Court said in Simpson, a waiver may be accomplished by the holder of the privilege, uh, by engaging in action inconsistent with a desertion, such as acknowledging or voluntarily disclosing a privilege communication with third person in a non-privileged setting. So certainly a non-privileged setting and weren't her actions and opening up and actually first person that even suggested that there was improper use of the Explorer funds when she opened up and said they were writing checks for personal expenses. That's inconsistent with her claim isn't it? I don't think that she ever said that they were writing checks. I mean, what she said was that Joe, that, that it would come to her attention that Joe had spent the money and she would, he would go to her and then she'd write a check back into the fund. So that being said, I, I don't, when I get back to this waiver, I go and explicit versus implicit and everything else. I'd go back to her statement where she categorically denied. I just want to concentrate on the, on the, the smoking gun here, which is the States. Um, what the state wants is this, this, this, um, comment about hiding the money. She gave her phone. It's not on her phone and she categorically did not under Simpson. I fail to see under any circumstances, how that statement, how she could have waived her privilege as to that statement. Well, she did say, did she not? And I'm quoting here. Yeah. I mean, if you've got Joe's phone and all that stuff off there, then you know what messages are between us. That is exposing communications between her and Joe. And she knew that the police had already taken, uh, and done a search on Joe's phone. Correct. Yes. And then, and then in the same interview, she get categorically denied making a statement. So I don't know how that can go ahead. This statement I just referred to was made after she was confronted with that comment. She's still acknowledged. You have all the messages, but obviously if we're going to talk about what's in her mind and you're saying, well, in her mind, she thought it would be the same, but also in her mind, she never made that statement. So there would be no reason that statement would be on his phone. She denied making the statement. Okay. Mr. Morrison. Thank you. Mr. Rebuttal. Your honors. Let's be clear. The people did not argue that defendant's phone would have the mirror image. It said that it should, unless defendant intentionally deleted the Of course she wants to protect the messages. That's not the issue. The issue is whether her consent and the comments she made relating to it waived her marital privilege. Nothing in defendant's consent form or her comments state that the consent was limited to content on defendant's phone while defense counsel's now making that argument defendant never did Her self-serving statements regarding her denial that she made the statement about hiding the money has no relevance. In essence, she lied in denying it. We know she made that statement. That does not mean she didn't waive it. If again, a defendant, police arrive at a defendant's house and say they want to search it and they have reason to believe that the defendant's dealing cocaine. If the defendant says, go ahead, search my house. You won't find the cocaine and they find it. That denial has no relevance. The evidence demonstrates she did make the statements as Justice Brennan's question suggested. What matters is defendant's intent at the time of consent, not her current argument. It might be implicit, possibly not explicit, but the fact that she's currently maintaining her innocence does not unwaive the privilege. The fact that the phone did not contain, defendant's phone did not contain the same information that was on Joe's phone lacks any relevance to the issue of whether or not defendant waived the privilege. The fact that it doesn't contain the same was twofold. One, defendant clearly deleted those texts. She did not delete other texts. And indeed, there are identical texts from between her and Joe on the phone, both before and after these incriminating texts. More importantly, Lake County never had possession of the phone. The feds, I think it may have been the Illinois State Police that did the actual extraction. They could have done a more in-depth extraction. They chose not to. I'm not happy. The people aren't happy. Lake County's not happy that it wasn't done. However, that doesn't do away with the fact that defendant clearly demonstrated that it was her understanding that the police would be able to look at the deleted portions of her phone and her intent at least implicitly waived her marital privilege. All right. Thank you, Mr. London. The court wants to thank both parties this morning for participating in oral argument remotely. A written decision will be issued in due course before it stands in recess. Thank you. Thank you, your honors.